1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MANUEL D. LOPES,

11             Petitioner,              No. CIV S-09-1359-KJM-TJB

12        vs.

13   MIKE MARTEL,

14             Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16                      I.  INTRODUCTION

17        Petitioner Manuel D. Lopes is a state prisoner proceeding pro se with a petition for writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that

19   the habeas petition be denied.

20                     II.  PROCEDURAL HISTORY

21        On August 2, 2005, a Sacramento County jury convicted Petitioner of "six counts of lewd

22   and lascivious conduct with a child under fourteen years of age (Pen. Code, § 288, subd. (a)); two

23   counts of assault with intent to commit rape by force or fear (§§ 220/261, subd. (a)(2)); and one

24   count each of rape (§ 261, subd. (a)(2)); unlawful oral copulation (§§ 289, subd. (a)(1))."

25   Lodged Doc. 4, at 1 (footnote omitted); *see* Lodged Doc. 22, Clerk's Tr. vol. 1, 154-56.

26   ///

1

1   Petitioner was sentenced "to a state prison term of 36 years [and] 8 months."  Lodged Doc. 4,

2   at 1.

3          Petitioner directly appealed to the California Court of Appeal, Third Appellate District.

4   *See* Lodged Doc. 1.  On October 10, 2007, California Court of Appeal issued a reasoned decision

5   affirming the conviction and sentence.  *See* Lodged Doc. 4.

6          Petitioner filed a petition for a rehearing in the California Court of Appeal.  *See* Lodged

7   Doc. 5.  On November 9, 2007, the California Court of Appeal denied Petitioner's petition for a

8   rehearing.  *See* Lodged Doc. 7.

9          Petitioner filed a petition for review in the California Supreme Court.  *See* Lodged Doc.

10  8.  On January 23, 2008, the California Supreme Court denied the petition without comment or

11  citation.  *See* Lodged Doc. 9.

12         In February 2008, Petitioner filed a petition for writ of habeas corpus with the

13  Sacramento County Superior Court.  *See* Lodged Doc. 10.  On April 7, 2008, the Superior Court

14  denied the petition.  *See* Lodged Doc. 11.

15         On August 19, 2008, Petitioner filed a petition for writ of habeas corpus with the

16  California Court of Appeal, Third Appellate District.  *See* Lodged Doc. 12.  On August 21, 2008,

17  the California Court of Appeal denied the habeas petition without comment or citation.  *See*

18  Lodged Doc. 13.

19         On September 11, 2008, Petitioner filed a petition for writ of habeas corpus with the

20  California Supreme Court.  *See* Lodged Doc. 14.  On March 11, 2009, the California Supreme

21  Court denied the habeas petition without comment or citation.  *See* Lodged Doc. 15.

22         On May 8, 2009, Petitioner filed a federal habeas petition.  *See* Pet'r's Pet., ECF No. 1.[1]

23

24         [1] The Case Management/Electronic Case Files (CM/ECF) docketing and file system is
    implemented, which allows the parties to electronically file pleadings and documents.  For
25  pleadings or documents submitted in paper format, the filing is scanned and stored electronically
    into the CM/ECF system, except for lodged documents.  Each page of the electronic filing is
26  numbered chronologically, whether or not the party numbered it.  If the filing is lengthy, the

2

CASE 2:09-cv-01359-KJM-TJB   Document 27   Filed 01/25/11   Page 3 of 38

On September 9, 2009, Respondent filed an answer, *see* Resp't's Answer, ECF No. 17, to which

Petitioner filed a traverse on December 15, 2009.  *See* Pet'r's Traverse, ECF No. 24.

### III.  FACTUAL BACKGROUND[2]

*Counts one through six -- lewd and lascivious conduct with a child*

[Petitioner] sexually assaulted his daughter, V., from the time she was eight years old until she was 14 years old.  The first assault occurred in 1998 when V. was in the third grade.  At that time, the family lived in an apartment in Sacramento.  The family consisted of [Petitioner], his wife Patricia, son Manny, daughter V., and [Petitioner's] brother Paul.

During the first assault, [Petitioner] entered the bedroom where V. was sleeping, put his hand underneath V.'s clothes, and rubbed her vagina.  V. told [Petitioner] to stop and leave her alone, but he did not.  V. next remembered being in her parents' bedroom.  She could not recall how she got there.  [Petitioner] sat down on the bed and V. stood in front of him.  [Petitioner] pulled down V.'s shorts and underwear and again rubbed her vagina.  V. could not recall how this incident ended.

V. testified that over the next four years, similar incidents of [Petitioner] rubbing her vagina occurred five or six times.  Three of the assaults happened while the family lived in the Sacramento apartment, while the remaining assaults occurred in [Petitioner's] parents' house in West Sacramento where the family had eventually moved.  The assaults occurred early in the morning.  [Petitioner] would take the day off work, take his wife to work early in the morning, then come home and molest V.

V. never told anyone about these assaults because she did not want to break up the family.  While molesting V., [Petitioner] told her not to tell anyone because he would go to jail.

---

document is divided into parts.  Here, when a page number for a filed pleading or document is cited, the CM/ECF page number is used when available, which may not coincide with the page number that the parties used.

[2] These facts are from the California Court of Appeal's opinion issued on October 10, 2007.  *See* Lodged Doc. 4, at 2-6.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

*Uncharged conduct*

One evening while V. was attending the seventh grade, her brother
had gone to a dance and her mother was attending a concert.
[Petitioner] drove V. along the river and parked the car.
[Petitioner] put window shades over the front and rear windshields.
V. became scared and began crying because she was afraid
something was going to happen.

A police car pulled up behind [Petitioner's] car.  The officer asked
[Petitioner] why he had the shades up.  [Petitioner] said he and V.
were just having a conversation and the lights from the other cars
were hurting V.'s eyes.  The officer asked V. if she was okay.  V.
said everything was fine.  The officer told [Petitioner] to keep
driving.  While driving home, [Petitioner] quickly touched V.'s
vagina over her clothing.

*Counts seven and eight -- assault with the intent to commit rape*

In January 2004, V. was in her ninth grade year.  One morning,
[Petitioner] took the day off work and took his wife to her work.
He returned home about 5:00 a.m., came into V.'s bedroom, and
took off her shorts and underwear.  V. cried and asked him not to
do it.  [Petitioner] told her to be quiet.  [Petitioner] attempted to
insert his finger inside V.'s vagina.  His finger was lubricated with
a gel, and he succeeded in getting the tip of his finger inside her.
V. moved away because it hurt her.  He continued trying, but
eventually gave up.

Then [Petitioner] climbed on top of V.  His boxer shorts were off.
V. felt his erection against her stomach.  She cried louder.
[Petitioner] put his hand over her mouth and told her to "shut up."
V. could not recall if [Petitioner's] penis went near her vagina or
how the attack ultimately ended.  After [Petitioner] left the room,
V. locked her door and cried herself back to sleep clutching one of
her teddy bears.

On a windy March 2004 day, [Petitioner] told V. and her brother,
Manny, that they could stay home from school due to the weather.
Manny went to school, but V. stayed home.  [Petitioner] took the
day off work.  He molested V. by touching her vagina and
attempting to insert his finger into it.  V[.] could not recall if he
penetrated.  At trial in 2005, V. also could not recall if [Petitioner]
crawled up on top of her.

During a videotaped forensic interview of V. conducted by staff at
the Multi Disciplinary Interview Center (MDIC) in May 2004, V.
stated that after [Petitioner] touched her vagina on this occasion, he
got on top of her and attempted to put his penis inside of her.  His
attempt was unsuccessful.  At trial, V. stated she could not
remember making this statement to the interviewer.

4

*Counts nine through eleven -- rape, unlawful oral copulation, forcible sexual penetration*

By April 2004, the family had moved to a new condominium in Sacramento. Once again, [Petitioner] took a day off work, drove his wife to work, then came home and molested V. He woke her up, picked her up out of bed, and carried her into his bedroom. V. cried and asked him not to do this to her. He laid her down on top of a white towel placed on his bed. He took V.'s pants and underwear off and began rubbing her vagina. His fingertip penetrated her vagina. V. squirmed and tried to move away from [Petitioner], hitting her head on the wall. [Petitioner] licked V.'s vagina. He got on top of her and tried to insert his penis into her vagina, but he could not get it in completely. V. tried to move away, but [Petitioner] grabbed her by the shoulders and pulled her back down. V. cried during the attack, and [Petitioner] told her to shut up and be quiet. He told her not to tell anyone what he had done because he would go to jail if she did.

V. did not report these assaults to her mother for fear it would break up the family. She did not disclose the molestations until sometime in 2004, when she wrote a letter to a friend stating she had been molested. That same year, she also told her brother of the assaults.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

///

5

1   (2) resulted in a decision that was based on an unreasonable
2   determination of the facts in light of the evidence presented in the
    State court proceeding.

3   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

4   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

5   In applying AEDPA's standards, the federal court must "identify the state court decision

6   that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

7   "The relevant state court determination for purposes of AEDPA review is the last reasoned state

8   court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

9   "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

10  orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

11  *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

12  must conduct an independent review of the record to determine whether the state court clearly

13  erred in its application of controlling federal law, and whether the state court's decision was

14  objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  "The

15  question under AEDPA is not whether a federal court believes the state court's determination

16  was incorrect but whether that determination was unreasonable--a substantially higher

17  threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

18  "When it is clear, however, that the state court has not decided an issue, we review that question

19  *de novo*." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

20  545 U.S. 374, 377 (2005)).

21                      V.  CLAIMS FOR REVIEW

22  The petition for writ of habeas corpus sets forth five grounds for relief:

23  1.  There was insufficient evidence for counts two to six for lewd and lascivious conduct

24      under Section 288(a) of the California Penal Code.  *See* Pet'r's Pet. 7.

25  2.  "Conviction of counts 2 to 6 [for lewd and lascivious conduct] were unlawful under

26      article I, section 14, of the California Constitution and under [S]ection 1009 [of the

                                        6

1    California Penal Code]; alternatively, trial counsel provided ineffective assistance by

2    failing to protect Petitioner's rights not to be convicted of uncharged offenses."

3    Pet'r's Pet. 19.

4    3.   The trial court had a sua sponte duty to instruct the jury using CALJIC No. 10.64,

5         limiting the use of expert testimony concerning Child Sexual Abuse Accommodation

6         Syndrome (CSAAS).  Pet'r's Pet. 30.

7    4.   "Petitioner's right to be present at all stages of this trial was violated by the taking of

8         the verdict, polling of jurors, and discharge of jurors in his absence."  *Id.* at 39.

9    5.   The prosecutor committed prejudicial misconduct.  *Id.* at 46.

10   Ground two is referenced more than once as it refers to separate issues.  The remaining

11   grounds are reviewed in seriatim.  Petitioner's grounds are addressed as follows:

12   1.   Ground One:  Insufficient Evidence

13   2.   Ground Two:  Unlawful Conviction under the California Constitution and Section

14        1009 of the California Penal Code

15   3.   Grounds Two:  Ineffective Assistance of Counsel

16   4.   Ground Three:  Failure to Give CALJIC No. 10.64

17   5.   Ground Four:  Right To Be Present

18   6.   Ground Five:  Prosecutorial Misconduct

19   For the following reasons, Petitioner's grounds do not entitle him to habeas relief.

20   A.  Ground One:  Insufficient Evidence

21   In ground one, Petitioner argues his conviction for counts two to six must be "reversed

22   because the evidence was insufficient to show that the offenses occurred at or near the time

23   alleged in the information."  Pet'r's Pet. 7.  Petitioner asserts that in the prosecutor's opening

24   statement, the prosecutor stated "the evidence would show that [P]etitioner started molesting V. .

25   . . 'when she was eight,' that it happened 'about once or twice a month for the better part of a

26   year,' and the assaults then subsided until the incident in the car when V. . . . was in 7th grade."

7

*Id.* at 8 (citation omitted).  However, according to Petitioner, "[t]he evidence at trial showed 1) only one violation of section 288, subdivision (a) when V. . . . was eight years old; 2) up to three violations at some unspecified period before the family's move to Bryte Avenue, which occurred when V. . . . was 10 to 12 years old; and 3) two or three violations occurring after the families move to Bryte Avenue and before the car incident."  Pet'r's Pet. 9.  Petitioner complains that "the jury was not required to make any findings . . . as to when the offenses alleged in count 1 through 6 occurred, [] other than finding that they occurred when V. . . . was under the age of 14 . . . ."  *Id.* at 9-10.

       1.  State Court Decision

      Here, the state court decision appropriate for review is the California Court of Appeal's decision because it is the "last reasoned state court decision" to address this issue.  *Delgadillo*, 527 F.3d at 925 (citations omitted).  The California Court of Appeal rejected Petitioner's insufficient evidence claim, stating in relevant part:

> [Petitioner] contends his due process rights to notice of the charges against him and an opportunity to defend were violated when he was convicted of counts two through six.  He claims we must reverse these convictions because there is no evidence showing these offenses occurred within the dates alleged in the information. We conclude [Petitioner] forfeited this argument.
>
> A.  *Background information*
>
> [Petitioner] waived his right to a preliminary hearing, and the complaint was deemed an information.  Counts one through six of the information each alleged that [Petitioner] violated section 288, subdivision (a), "on or about and between August 08, 1997, and August 07, 1998," and that V. was a child "under the age of 14 years, to wit, age 8 years[.]"[3]
>
> In his opening statement, the prosecutor told the jury that the molestations began when V. was eight years old in the third or fourth grade, and they "happened on a consistent basis of approximately once or twice a month for the better part of a year." He stated counts one through six involve the time frame when V. "was in third grade."

---

[3] V.'s birthday is August 8, 1989.

8

At trial, V. testified to only one incident that occurred when she was in the third grade.  When asked if [Petitioner] molested her any other times when she was that age, V. said, "I really don't remember."  When asked to describe the next incident, V. described the incident that occurred in the car on their way home from the river.  V. was in the seventh grade at that time.

Explaining the event in the car, V. stated she had had a feeling [Petitioner] was going to assault her because he sometimes would touch her for no reason.  Asked how many times [Petitioner] had touched her before the car incident, V. said she could not remember.  When asked to give her best estimate, V. said it "happened more than once, but I can say maybe about five, six times."  These incidents happened between the time V. was in the third and seventh grades, or between the ages of eight and 12 or 13.  Three of the incidents happened at the Sacramento apartment, the others happened at the West Sacramento home.  According to trial testimony, the family moved to West Sacramento either in 2000 when V. was 10 years old or in 2002 when V. was 12.  V. gave no additional details about the five or six other incidents.

During his closing argument, the prosecutor expanded on his earlier opening statement.  The prosecutor stated counts two through six "involved the first set of touches that [V.] went through . . . when she was in third grade until the time she was just ready to turn 14."

During deliberation, the jury requested and received read back of V.'s testimony "regarding the fondeling [*sic*] incidents from 3rd grade through 7th grade.  Regarding counts 1-6."

The verdict forms relating to counts two through six did not require the jury to state the date of the offenses.  The forms referred to a violation of section 288, subdivision (a), "as charged in Count [ __ ] of the Information."  The information was read to the jurors at the beginning of trial, but apparently was not provided to them during their deliberations.

B.  *Analysis*

[Petitioner's] argument goes to the variance between the pleading and the proof.  The information alleged [Petitioner] molested V. six times while V. was eight years old.  The trial testimony established that [Petitioner] molested V. at least once when she was eight, but at least three of the other incidents occurred after V. had turned 10 or 12 years old.  [Petitioner] claims the variance between the dates alleged in the information and the testimony at trial violated his due process rights.

[Petitioner] forfeited his right to raise this argument here by not

9

objecting to the variance in the trial court.  "An objection on the ground of variance between the pleading and the proof cannot be made for the first time on appeal where [the] defendant was not injured or prejudiced by the variance.  [Citation.]"  (*People v. Amy* (1950) 100 Cal.App.2d 126, 128.)

[Petitioner] suffered no harm from the variance.  He testified on his own behalf and declared he never molested V. at any time.  Thus, no matter what day the information may have alleged, [Petitioner]'s defense would have been the same.  "[A] variance may be disregarded where the action has been as fully and fairly tried on the merits as though the variance had not existed."  (*Hayes v. Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382.)  [Petitioner]'s failure to object to the variance at trial forfeits the argument here.

Also, by waiving a preliminary hearing, [Petitioner] forfeited his right to complain that he was provided with insufficient notice of the charges against him.  "'It is clear that in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords [the] defendant practical notice of the criminal acts against which he must defend. . . . [T]he time, place and circumstances of charged offenses are left to the preliminary hearing transcript; it is the touchstone of due process notice to a defendant.'  [Citation.]"  (*People v. Butte* (2004) 117 Cal.App.4th 956, 959, italics omitted.)  A defendant forfeits his right to challenge notice of the charges against him when he forgoes his right to a preliminary hearing.  (*Ibid.*)

By waiving his preliminary hearing and by not objecting to the variance at trial, [Petitioner] forfeited his right to challenge the variance here on appeal.

Lodged Doc. 4, at 6-10.

2.  Analysis

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice.  *Id.* at 750.  A petitioner must establish factual innocence to show that a

fundamental miscarriage of justice would result from application of procedural default.

*Gandarela v. Johnson*, 275 F.3d 744, 749-50 (9th Cir. 2002).

The California Court of Appeal held that Petitioner's waiver of his preliminary hearing

and failure to object to the variance at trial waived the claim.  The Ninth Circuit has recognized

and applied the California contemporaneous objection rule in affirming denial of a federal

petition on grounds of procedural default where there was a complete failure to object at trial.

*See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005).  There was a complete failure

to object here, so this claim is procedurally defaulted.  Petitioner has not shown cause, prejudice,

or a miscarriage of justice, and the failure to object bars consideration of this claim.

B. Ground Two:  Unlawful Conviction under the California Constitution and Section

1009 of the California Penal Code

In ground two, Petitioner argues his "right to be convicted only of the offenses originally

charged in counts 2 through 6 were violated because his convictions on these counts were based

on testimony about incidents not occurring . . . near the time frame charged in the information."

Pet'r's Pet. 19.  Petitioner claims article I, section 14 of the California Constitution[4] and Section

1009 of the California Penal Code[5] were violated because "the indictments described at trial were

not shown to be the same incidents with which [P]etitioner was charged," and "they could not

legally form the basis of [P]etitioner's convictions on these counts . . . ."  Pet'r's Pet. 24

(citations omitted).

///

---

[4] Petitioner quotes the following from article I, section 14, of the California Constitution: "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."  Pet'r's Pet. 20.

[5] Petitioner quotes the following from section 1009: "[A]n indictment or accusation cannot be amended so as to change the offense charged, nor information as to charge an offense not shown by the evidence taken at preliminary examination."  Pet'r's Pet. 21.

1          1.  State Court Decision

2        The California Court of Appeal rejected Petitioner's claim regarding his conviction of

3   alleged uncharged crimes, stating in relevant part:

> 4  [Petitioner] argues the variance between the information's allegations of counts two through six occurring when V. was eight
> 5  years old and V.'s testimony at trial, as just described, resulted in him being convicted of crimes for which he was not charged.
> 6  [Petitioner] failed to raise this objection below, and thus has forfeited the argument here.  (*See People v. Gil* (1992) 3
> 7  Cal.App.4th 653, 659 [failure to object that offenses shown at trial were not the same ones shown at the preliminary hearing results in
> 8  forfeiture of argument on appeal].)

9   Lodged Doc. 4, at 10.

10         2.  Analysis

11        "In conducting habeas review, a federal court is limited to deciding whether a conviction

12  violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S.

13  62, 68 (1991).  Habeas relief is not available for an alleged error in the interpretation or

14  application of state law.  *See id.* at 67-68.  A federal district court has "no authority to review a

15  state's application of its own laws."  *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990).  Instead,

16  federal courts may grant habeas relief only to correct errors of federal constitutional magnitude.

17  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).

18        Here, Petitioner does not allege that he was deprived of any federally protected right.

19  Instead, Petitioner's claim involves only alleged state law errors, and is not cognizable on federal

20  habeas review.  *See generally Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining

21  federal petitioner may not "transform a state-law issue into a federal one merely by asserting a

22  violation of due process"), *cert. denied*, 522 U.S. 881 (1997).  Petitioner's claim asserting that

23  his convictions violated the California Constitution and section 1009 is not reviewable.

24        Additionally, like ground one, this claim is procedurally defaulted because there was a

25  complete failure to object at trial.  *See Inthavong*, 420 F.3d at 1058.  Petitioner has not shown

26  show cause, prejudice, or a miscarriage of justice, and the failure to object also bars

1   consideration of this claim.

2       C.  Ground Two:  Ineffective Assistance of Counsel

3       In ground two,  Petitioner asserts his trial attorney rendered ineffective assistance for

4   "fail[ure] to . . . protect [P]etitioner's right, in counts 1 - 6, to be convicted only of the offenses

5   with which he was charged."  Pet'r's Pet. 28.  After the state court decision and the legal standard

6   are set forth, the alleged prejudicial errors are reviewed as follows:  (1) "fail[ure] to request an

7   instruction, such as CALJIC No. 4.71 or CALCRIM No. 20[7], which would have informed the

8   jury that the [P]eople were required to prove that the crime was committed on or about the dates

9   alleged in the information," Pet'r's Pet. 28; (3) "fail[ure] to object to the prosecutor[']s closing

10  argument asking for conviction based on incidents well outside the charged time frame," *id.* at

11  28; and (4) "fail[ure] to move for acquittal based on the failure of proof of incidents occurring at

12  or reasonably near the charged time frame."  *Id.* at 29.

13      1.  State Court Decision

14      The California Court of Appeal rejected Petitioner's ineffective assistance of counsel

15  claims as follows:

16          [Petitioner] contends he suffered ineffective assistance of counsel
            due to his attorney's failure to object to the inconsistency between
17          the pleading and the proof.  Specifically, he claims his attorney:
            failed to request an instruction, such as CALJIC No. 4.71 or
18          Judicial Council of California Criminal Jury Instructions,
            CALCRIM No. 207, to inform the jury that the People had to prove
19          the crimes were committed on or about the dates alleged in the
            information; failed to object to the prosecutor's closing argument
20          asking for convictions of crimes outside the dates in the
            information; and failed to move for an acquittal based on the
21          failure to prove the incidents occurred on or about the dates alleged
            in the information.
22
            To establish ineffective assistance of counsel, [Petitioner] must
23          show (1) his counsel's representation fell below an objective
            standard of reasonableness; and (2) there is a reasonable
24          probability the result would have been different absent the error.
            (*In re Resendiz* (2001) 25 Cal.4th 230, 239, citing *Strickland v.*
25          *Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 693].)

26          [Petitioner] cannot show a reasonable probability of a different

                                      13

result absent counsel's failure to object.  First, the variance was immaterial, and the court and jury could disregard it.  "The precise time of a crime need not be declared in the accusatory pleading.  It is sufficient if it alleges the commission of the offense at any time before the filing of the information, except where the time is a material ingredient of the offense."  (*People v. Wrigley* (1968) 69 Cal.2d 149, 155.)

The specific date is not a material factor in proving a violation of section 288, subdivision (a), except as to prove the victim was under the age of 14 years at the time of the offense.  The information met this requirement.  "Even in alibi cases, neither the time [citation] nor the place at which an offense is committed [citations] is material, and an immaterial variance will be disregarded [citation]."  (*People v. Pitts* (1990) 223 Cal.App.3d 606, 906 (*Pitts*).)  An objection thus would not have changed the verdict.

Second, had defense counsel objected, the court most likely would have allowed the prosecution to amend the dates alleged in the information.  [Petitioner] claims section 1009 would have forbidden the court from allowing such an amendment.  [Petitioner] reads section 1009 too broadly.

Section 1009 provides, in relevant part:  "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed. . . . An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

As explained in *People v. Winters* (1990) 221 Cal.App.3d 997, 1005 (*Winters*), "Section 1009 authorizes amendment of an information at any stage of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination.  If the substantial rights of the defendant would be prejudiced by the amendment, a reasonable postponement not longer than the ends of justice require may be granted.  The questions of whether the prosecution should be permitted to amend the information and whether continuance in a given case should be granted are matters within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of discretion.  Moreover, a trial court correctly exercises its discretion by allowing an amendment of an information to properly state the offense at the conclusion of the

trial.  Similarly, where the amendment makes no substantial change in the offense charged and requires no additional preparation or evidence to meet the change, the denial of a continuance is justified and proper.  [Citations.]"

In *Winters*, the defendant was charged with possession of methamphetamine for sale.  [The d]efendant waived a preliminary hearing.  On the second day of trial, the trial court allowed the prosecution to amend the information to allege a second count of transportation of methamphetamine.  The appellate court reversed [the] defendant's conviction on the added count.  The court concluded that because the preliminary hearing was waived, there was no evidence presented at a preliminary hearing upon which the amendment could be based.  The court was left with the allegations of the complaint.  An amendment that added a different crime than asserted in the complaint changed the offense charged and was not proper under section 1009.  (*Winters*, *supra*, 221 Cal.App.3d at pp. 1007-1008.)

Here, an amendment to change the dates of the alleged crimes would not add any new counts or charge any violations of new or different code sections.  The only difference between the information and the amended information would have been the time frames.  The amended information still would have charged [Petitioner] with six acts of lewd and lascivious acts on V., a child under 14 years of age, under section 288, subdivision (a).  The amendment would not have changed the essential ingredients of the offenses charged:  the perpetrator remained the same, the victim remained the same, and the conduct remained the same.  The amendments would not have charged a different offense not shown by evidence at a preliminary hearing.  Rather, it only would have corrected an immaterial variance.  Such an amendment does not run afoul of section 1009.

This is particularly true in light of [Petitioner's] decision to waive a preliminary hearing.  The function of the preliminary hearing is to give the defendant notice of "all the particulars of the crime charged."  (*Pitts*, *supra*, 223 Cal.App.3d at p. 905.)  The information, by contrast, provides much more general notice of the charges.  (*Id.* at p. 904.)  "'Notice of the specific charge is a constitutional right of the accused.  [Citation.]  An information which charges a criminal defendant with multiple counts of the same offense does not violate due process so long as (1) the information informs [the] defendant of the nature of the conduct with which he is accused and (2) the evidence presented at the preliminary hearing informs him of the particulars of the offenses which the prosecution may prove at trial.  [Citations.]  The information plays a limited but important role -- it tells a defendant what kinds of offenses he is charged with and states the number of offenses that can result in prosecution.  However, the time, place, and circumstances of charged offenses are left to the preliminary

hearing transcript. This is the touchstone of due process notice to a defendant.'" (*Ibid.*)

Here, the information informed [Petitioner] of the kinds of offenses charged and the number of charges that resulted in prosecution. To the extent [Petitioner] sought more specificity as to the time, place and manner of the charges, he was entitled to receive it at a preliminary hearing. He waived that right. Thus, this case does not present a contradiction between the trial testimony and any preliminary hearing testimony.

Third, [Petitioner] suffered no prejudice. He was charged with six violations of section 288, subdivision (a), and his defense to each was that he never molested V. Given the amended information at hand, his defense did not change. It would not have changed even if the information had been amended. For all of these reasons, [Petitioner] cannot show he suffered prejudicial harm from any ineffective assistance of counsel.

Lodged Doc. 4, at 10-15.

### 2. Legal Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court sets forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). An allegation of ineffective assistance of counsel requires that a petitioner establish two elements: (1) counsel's performance was deficient; and (2) the petitioner was prejudiced by the deficiency. *Id.* at 687; *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. To this end, a petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *Id.* "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990)

16

1 (citing *Strickland*, 466 U.S. at 689).

2       Second, a petitioner must establish that he was prejudiced by counsel's deficient

3 performance.  *Strickland,* 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

4 probability that, but for counsel's unprofessional errors, the result of the proceeding would have

5 been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine

6 confidence in the outcome."  *Id.*; *see also Williams,* 529 U.S. at 391-92; *Laboa v. Calderon,* 224

7 F.3d 972, 981 (9th Cir. 2000).

8       A court need not determine whether counsel's performance was deficient before

9 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

10 *Strickland*, 466 U.S. at 697.  Since the petitioner must affirmatively prove prejudice, any

11 deficiency that does not result in prejudice must necessarily fail.  However, certain instances are

12 legally presumed to result in prejudice, e.g., where there was an actual or constructive denial of

13 the counsel's assistance, or where the State interfered with counsel's assistance.  *Id.* at 692; *see*

14 *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984).

15                3.  Analysis of Ineffective Assistance of Counsel Claims

16                     a.  Failure to Request Jury Instruction CALJIC No. 4.71 or CALCRIM

17                     No. 207

18       In ground two, Petitioner argues trial counsel was deficient for failing "to request an

19 instruction, such as CALJIC No. 4.71 or CALCRIM No. 20[7], which would have informed the

20 jury that the [P]eople were required to prove that the crime was committed on or about the dates

21 alleged in the information."  Pet'r's Pet. 28.  CALJIC No. 4.71 states:  "When, as in this case, it

22 is alleged that the crime charged was committed 'on or about' a certain date, if you find that the

23 crime was committed, it is not necessary that the proof show that it was committed on that

24 precise date; it is sufficient if the proof shows that the crime was committed on or about that

25 date."  CALCRIM No. 207 states:  "It is alleged that the crime occurred on [or about]

26                             _____ <insert alleged date>.  The People are not required to prove that the

1   crime took place exactly on that day but only that it happened reasonably close to that day."

2         The California Court of Appeal reasonably found that Petitioner cannot demonstrate

3   prejudice.  Under California law, it is well settled that "[w]here alibi is not a defense, the

4   prosecution need only prove the act was committed before the filing of the information and

5   within the period of the statute of limitations."  *People v. Obremski*, 207 Cal. App. 3d 1346,

6   1354, 255 Cal. Rptr. 715 (1989) (citing *People v. Osuna*, 161 Cal. App. 3d 429, 433, 207 Cal.

7   Rptr. 641 (1984)).  The California Court of Appeal properly noted that "[t]he specific date is not

8   a material factor in proving a violation of section 288, subdivision (a), except as to prove the

9   victim was under the age of 14 years at the time of the offense."  Lodged Doc. 4, at 11; *see*

10  *People v. Peyton*, 176 Cal. App. 4th 642, 660, 98 Cal. Rptr. 3d 243 (2007) ("The precise date on

11  which an offense was committed need not be stated in an accusatory pleading unless the date is

12  material to the offense (§ 955), and the evidence is not insufficient merely because it shows the

13  offense was committed on another date."  (citing *People v. Starkey*, 234 Cal. App. 2d 822, 827,

14  44 Cal. Rptr. 738 (1965))).  Petitioner did not present an alibi defense; rather, the California

15  Court of Appeal correctly noted Petitioner's defense "to each [of the six violations] was that he

16  never molested V."  Lodged Doc. 4, at 15.  Petitioner testified to the following:

17          [DEFENSE COUNSEL:]  Did you, while your daughter was in the
        third grade, ever place your bare hand underneath her panties or
18          under pants?

19          [PETITIONER:]  No.  I did not molest my daughter at any time.

20          [DEFENSE COUNSEL:]  That wasn't the question.  My question
        to you is:
21

22          Did you, when your daughter was in the third grade, ever put your
        bare hand underneath her panties or under pants?

23          [PETITIONER:]  No.

24          [DEFENSE COUNSEL:]  Did you at any time while your daughter
        was in the third grade in the apartment on 57th Avenue ever
25          attempt to place your finger inside your daughter's vagina?

26          [PETITIONER:]  No, I did not.

1   Lodged Doc. 17, Rep.'s Tr. vol 2, 533.  The record shows that the California Court of Appeal

2   reasonably found that Petitioner suffered no prejudice because his defense was "that he never

3   molested V."  Lodged Doc. 4, at 15.  Petitioner's claim that counsel was deficient for failing to

4   request jury instruction CALJIC No. 4.71 or CALCRIM No. 207 fails.

5                  b.  Failure to Object to Prosecutor's Closing Argument

6          In ground two, Petitioner argues trial counsel was deficient for "fail[ing] to object to the

7   prosecutor[']s closing argument asking for conviction based on incidents well outside the

8   charged time frame."  Pet'r's Pet. 28.  However, "[b]ecause many lawyers refrain from objecting

9   during opening statement and closing argument, absent egregious misstatements, the failure to

10  object during closing argument and opening statement is within the 'wide range' of permissible

11  professional legal conduct."  *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)

12  (citing *Strickland*, 466 U.S. at 689).  As discussed above, trial counsel's failure to object to the

13  prosecutor's closing argument did not cause *Strickland* prejudice.

14         Further, the California Court of Appeal reasonably found that "had defense counsel

15  objected, the court most likely would have allowed the prosecution to amend the dates alleged in

16  the information."  Lodged Doc. 4, at 12.  "Section 1009 authorizes amendment of an information

17  at any stage of the proceedings provided the amendment does not change the offense charged in

18  the original information to one not shown by the evidence taken at the preliminary examination."

19  *People v. Winters*, 221 Cal. App. 3d 997, 1005, 270 Cal. Rptr. 740 (1990).  Only "when no

20  preliminary hearing is held, the defendant may not be charged with additional crimes not charged

21  in the pleading to which he waived his right to a preliminary hearing.  Allowing such an

22  amendment violates section 1009, even if the amendment did not prejudice the defendant or the

23  defendant had notice of the facts underlying the new charges."  *Peyton*, 176 Cal. App. 4th at 654,

24  98 Cal. Rptr. 3d 243 (citing *Winters*, 221 Cal. App. 3d at 1006-07, 270 Cal. Rptr. 740).

25         Here, trial counsel's failure to object to the prosecutor's closing arguments does not

26  prejudice Petitioner because "the prosecutor would have immediately become aware of his error,

1    and would have amended the information, in accordance with section 1009 of the California

2    Penal Code." *Jones v. Smith*, 231 F.3d 1227, 1239 & n.8 (9th Cir. 2000) (finding "counsel's

3    unfortunate oversight in failing to realize the discrepancy between the information and jury

4    instructions did not prejudice [p]etitioner," and petitioner's ineffective assistance of counsel

5    claim failed); *see also Rhoades v. Henry*, 596 F.3d 1170, 1179 (9th Cir. 2010) (holding counsel

6    did not render ineffective assistance in failing to investigate or raise argument on appeal where

7    "neither would have gone anywhere"); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he

8    failure to take a futile action can never be deficient performance . . . ."). The California Court of

9    Appeal reasonably held that the trial court would permit the prosecutor to amend the dates of the

10   alleged violations because it would not charge Petitioner with additional crimes. *See Winters*,

11   221 Cal. App. 3d at 1005, 270 Cal. Rptr. 740. Petitioner's claim that counsel was deficient for

12   failing to object to the prosecutor's closing argument fails.

13                              c.  Failure to Move for an Acquittal

14          In ground two, Petitioner argues trial counsel was deficient for "fail[ing] to move for an

15   acquittal based on the failure of proof of incidents occurring at or reasonably near the charged

16   time frame" on counts one through six. Pet'r's Pet. 29. As explained earlier, for counts one

17   through six, Petitioner was convicted of Section 288(a) of the California Penal Code. Section

18   288(a) states: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . .

19   upon or with the body, or any part or member thereof, of a child who is under the age of 14 years,

20   with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that

21   person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison

22   for three, six, or eight years."

23          Pursuant to California law, "[a] trial court should deny a motion for acquittal under

24   [S]ection 1118.1 [of the California Penal Code] when there is any substantial evidence, including

25   all reasonable inferences to be drawn from the evidence, of the existence of each element of the

26   offense charged." *People v. Mendoza*, 24 Cal. 4th 130, 175, 99 Cal. Rptr. 2d 485, 6 P.3d 150

1   (2000).  "In short, the trial court must determine whether the prosecution has established a prima

2   facie case" and must determine "that the prosecution in its case-in-chief presented sufficient

3   evidence to warrant the submission of the [case] to the jury."  *People v. Ainsworth*, 45 Cal. 3d

4   984, 1022, 248 Cal. Rptr. 568, 755 P.2d 1017 (1988).

5        Petitioner did not demonstrate prejudice on his claim that trial counsel was ineffective for

6   failing to make a motion for acquittal.  The evidence at trial established that the first time

7   Petitioner molested V. was when she was eight.  Lodged Doc. 16, Rep.'s Tr. vol. 1, 183-89.  V.

8   also testified that Petitioner molested her five or six times from the third grade to the seventh

9   grade.  *Id.* at 193-94.  V. explained Petitioner molested her "[m]aybe about three times in the

10  apartment and two or three times in [her] grandma, grandpa's house."  *Id.* at 194-95.  This

11  happened "early in the morning, like he would take the day off of work and he would take [V.'s]

12  mom to work and he would just come home and just mess with [V.]."  *Id.* at 195.  The evidence

13  was sufficient to allow the case to proceed to the jury to determine whether the elements of the

14  offenses charged against Petitioner had been proven beyond a reasonable doubt.  A motion for

15  acquittal under these circumstances would have been futile.  *Jones*, 231 F.3d at 1239 n.8; *see*

16  *also Rhoades*, 596 F.3d at 1179; *Matylinsky v. Budge*, 577 F.3d 1083, 1094 (9th Cir. 2009)

17  (concluding counsel's failure to object to testimony on hearsay grounds not ineffective where

18  objection would have been properly overruled); *Rupe*, 93 F.3d at 1445.  Petitioner is not entitled

19  to relief on this claim.

20        D.  Ground Three:  Failure to Give CALJIC No. 10.64

21        In ground three, Petitioner contends that the trial court's failure to give a limiting

22  instruction on the use of Child Sexual Abuse Accommodation Syndrome (CSAAS) evidence was

23  prejudicial error.  At trial, the prosecution introduced expert testimony about CSAAS.  CSAAS

24  "describes various emotional stages, experienced by sexually abused children, that may explain

25  their sometimes piecemeal and contradictory manner of disclosing abuse."  *Brodit v. Cambra*,

26  350 F.3d 985, 991 (9th Cir. 2003), *cert. denied*, 542 U.S. 925 (2004).  Some California courts

21

have held that a limiting instruction must be given when CSAAS evidence is received.  *See, e.g.,*

*People v. Housley*, 6 Cal. App. 4th 947, 959, 8 Cal. Rptr. 2d 431 (1992).  Petitioner claims that

CALJIC 10.64 should have been given, and that failure to give it was prejudicial error.[6]

        1.  State Court Decision

        The California Court of Appeal rejected Petitioner's failure to give CALJIC No. 10.64

claim as follows:

        A.  *Additional background information*

> The prosecutor put on Dr. Anthony Urquiza, a psychologist, as an expert witness on CSAAS.  He stated his purpose in testifying was to give jurors an understanding of what typically happens with a child who has been sexually abused.

> He explained five characteristics which, according to the CSAAS theory, often occur in children who have been sexually abused:  (1) secrecy, or seeking to keep the victim silent by means that may include threats, intimidation, or physical abuse aimed at the victim or the victim's parent; (2) the victim's feeling of helplessness; (3) the victim's feeling of entrapment and attempts to cope by accommodation; (4) delayed or unconvincing disclosure of the abuse; and (5) retraction, especially after the abuser or a proxy has

---

    [6] CALJIC 10.64 provides:

> Evidence has been presented to you concerning [child sexual abuse accommodation] [rape-trauma] syndrome.  This evidence is not received and must not be considered by you as proof that the alleged victim's [molestation] [rape] claim is true.

> [[Child sexual abuse accommodation] [Rape trauma] syndrome research is based upon an approach that is completely different from that which you must take to this case.  The syndrome research begins with the assumption that a [molestation] [rape] has occurred, and seeks to describe and explain common reactions of [children] [females] to that experience.  As distinguished from that research approach, you are to presume the defendant innocent.  The People have the burden of proving guilt beyond a reasonable doubt.]

> You should consider the evidence concerning the syndrome and its effect only for the limited purpose of showing, if it does, that the alleged victim's reactions, as demonstrated by the evidence, are not inconsistent with [him] [her] having been [molested] [raped].

had access to the victim and has made threats or has tried to arouse the victim's feelings of guilt and responsibility for harming the abuser or others in the family.

Dr. Urquiza stated he had not met with V. or read police reports documenting V.'s claims. It was not his place to make a determination whether a particular person had been abused or was a perpetrator. Rather, he and the CSAAS theory were to inform and educate. Determining whether a child had been abused is "not the role of the accommodation syndrome. . . . [T]he purpose is educational, not to make a determination about guilt or innocence about whether a person has been abused or not. It's not diagnostic. It's really is [sic] a means to educate a jury about sexual abuse."

The prosecutor posed a hypothetical question to Dr. Urquiza. A child is in the presence of her father, a molester, in a vehicle in a deserted area. The father was about to molest the child when a police officer arrived and conducted a brief investigation. Asked if it would be consistent with CSAAS for the child not to disclose a history of molestation to the officer, Dr. Urquiza replied it would be consistent to be reluctant or to fail to disclose, as the child might have been afraid of what was going to happen and of the potential consequences to her father.

The prosecutor followed up with additional facts to the scenario. If the same child was afraid that disclosure would break up the family and lead to economic uncertainty, and if the father had instructed the child not to disclose to avoid him going to jail, would CSAAS account for nondisclosure? "Certainly," Dr. Urquiza responded.

During closing argument, the prosecutor stated that one of the reasons the jury should find V. credible was that her delayed disclosures of the molestations and her behavior "are entirely consistent with how molested children operate."

B.  *Analysis*

Expert testimony on CSAAS is permissible to disabuse jurors of myths or misconceptions about sexual abuse victims. However, the testimony cannot be used to suggest that abuse occurred in a particular case. (*People v. Housley* (1992) 6 Cal.App.4th 947, 954-955 (*Housley*).)

Expert witness testimony on CSAAS is permissible for rehabilitation of the alleged victim's credibility, and is "'limited to discussion of victims as a class, supported by references to literature and experience (such as an expert normally relies upon) and does not extend to discussion and diagnosis of the witness in the case at hand.'" (*People v. Jeff* (1988) 204 Cal.App.3d 309, 331-332 (*Jeff*), quoting *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100.) The purpose of this limitation is to prevent the

23

potential misuse of the expert's testimony by the jury to conclude the victim has essentially been diagnosed with a syndrome that presupposes the molestation occurred.  (*Jeff*, *supra*, 204 Cal.App.3d at p. 331.)

There is "some disagreement concerning whether the defendant is entitled to a sua sponte instruction specifically limiting the use of this evidence." (*Housley*, *supra*, 6 Cal.App.4th at p. 957.)  Some courts have concluded it is appropriate to impose such a duty (e.g., *id.* at pp. 958-959; *People v. Bowker* (1988) 203 Cal.App.3d 385, 394), while others have suggested a limiting instruction is required only if requested.  (*People v. Stark* (1989) 213 Cal.App.3d 107, 116; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 735; *People v. Bothuel* (1988) 205 Cal.App.3d 581, 587-588, overruled on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 348.)

Assuming for purposes of argument that the trial court had a duty to give sua sponte a limiting instruction, the court's failure to do so here was not prejudicial and does not require reversal.  When the expert testimony about CSAAS is couched in general terms and the jury is informed that the expert had no contact with the victim or knowledge of the underlying facts, it is not reasonably probable that the jury could have interpreted the expert testimony as being offered as proof that the victim in fact was sexually abused.  In that instance, the failure to provide a limiting jury instruction is harmless.  (*Housley*, *supra*, 6 Cal.App.4th at p. 959.)

Such was the case here.  Dr. Urquiza's testimony described behavior common to abused victims as a class, rather than any individual victim, and he testified that he had neither met the victim nor read any of the police reports filed on the incidents.  Hence, it is not reasonably probable that [Petitioner] would have received a more favorable verdict had a limiting instruction been given.

[Petitioner], however, argues that the prosecutor's solicitation of the expert's opinion to hypothetical facts patterned on the actual facts of an incident was prejudicial error in light of the court's failure to give a limiting instruction.  We disagree.  The error was not prejudicial because Dr. Urquiza, the prosecutor, and defense counsel clearly informed the jury that Dr. Urquiza was not testifying to make a determination that a particular person had been sexually abused.

Dr. Urquiza testified he was not determining whether a person had been abused or was a perpetrator.  He had read no police reports and had not met with V.  He stated that the purpose of the CSAAS theory was solely educational, not diagnostic.  Determining whether a child had been abused is "not the role of the accommodation syndrome."

1

> In his closing argument, the prosecutor explained that he brought
2
> Dr. Urquiza before the jury to explain away myths surrounding
> how people believe molested children in general should act. The
3
> prosecutor emphasized that V. acted consistently with the
> behaviors described by Dr. Urquiza, but he did not at any time
> indicate that Dr. Urquiza had determined V. had been molested.
4

5
> To make sure the jury understood this point, even defense counsel
> emphasized it in his closing argument: "Dr. Urquiza . . . very
> honestly tells you that this is an educational tool. And we're giving
6
> it to you to educate you on something you may not be aware of."

7
> Thus, the purpose and limitation of Dr. Urquiza's testimony was
> driven home at least three times. CALJIC No. 10.64 would have
8
> added only a fourth recitation of the same information. With their
> common understanding of Dr. Urquiza's purpose, the jury would
9
> not have used Dr. Urquiza's testimony as a basis for determining
> the molestations here at issue occurred. Any error thus was not
10
> prejudicial.

11   Lodged Doc. 4, at 16-21.

12              2. Legal Standard for Failure to Give CALJIC No. 10.64

13        There is no clearly established United States Supreme Court authority setting a general

14   standard for when due process requires limiting instructions. The controlling authority is that

15   which applies to all failures to give instructions.

16        Failure to give an instruction does not alone raise a ground cognizable in a federal habeas

17   corpus proceedings. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so

18   infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth

19   Amendment. *Id.* The omission of an instruction is less likely to be prejudicial than a

20   misstatement of the law. *Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing

21   *Henderson v. Kibbe*, 431 U.S. 145, 155 (1997)). A habeas petitioner whose claim involves a

22   failure to give a particular instruction bears an "especially heavy burden." *Villafuerte v. Stewart*,

23   111 F.3d 616, 624 (9th Cir.1997) (quoting *Kibbe*, 431 U.S. at 155).

24              3. Analysis

25        Petitioner points out that the hypothetical questions the expert answered seem to apply to

26   this case, *see* Pet'r's Pet. 36, but that is not enough to make admission of the expert testimony

1   error under state law, much less under the United States Constitution.  Under California law,

2   expert testimony about CSAAS may be received to explain why the particular victim acted in a

3   manner that the jury might, in the absence of an explanation of CSAAS, think is inconsistent

4   with the victim's story of abuse – for instance, by delaying telling an adult about it.  *People v.*

5   *Sandoval*, 164 Cal. App. 4th 994, 1001-02, 79 Cal. Rptr. 3d 634 (2008) ("Expert testimony on

6   the common reactions of a child molestation victim is not admissible to prove the sex crime

7   charged actually occurred.  However, CSAAS testimony 'is admissible to rehabilitate [the

8   molestation victim's] credibility when the defendant suggests that the child's conduct after the

9   incident–e.g., a delay in reporting–is inconsistent with his or her testimony claiming

10  molestation.'" (citations omitted)); *see Brodit*, 350 F.3d at 991 ("Under the CSAAS analysis,

11  inconsistencies in a child's accounts of abuse do not necessarily mean that the child is lying.  The

12  child could be telling different parts of what happened to different adults, based on the child's

13  comfort level with each adult or on the developmental immaturity of the child's memory.").

14          Here, the expert testified in general terms, although the prosecutor posed hypothetical

15  questions containing facts similar to the facts of this case:

16          [PROSECUTOR:]  Okay.  Let me give you a hypothetical.  Let's
            assume, hypothetically, that a child is in the presence of her father,
17          the abuser in her life, the molester, assume two of these individuals
            are in a vehicle in a deserted area.  And I want you to further
18          assume for the hypothetical that right on the edge of an assault,
            within the confines of the vehicle in which these two are located in
19          a remote area, a policeman were to arrive on scene, and conduct . .
            . a brief investigation of why this vehicle is out in this deserted area
20          with this man [and] this young girl.

21          Would it be consistent with the syndrome for the child at that point
            in time not to disclose the history of molest at the hand of the adult
22          to the officer?

23          [DR. URQUIZA:]  It certainly would be consistent to be very
            reluctant or to fail to disclose.  Either because they didn't know the
24          circumstances, they didn't know what was going to be -- what
            would happen and they're afraid.  And or because in that situation,
25          they could well have been afraid not just of what was going to
            happen but of the consequences to the father.  And again, as I said
26          earlier, it is quite common for kids to like and sometimes love their

                                                26

perpetrator.  It seems like an unusual thing to love the person
who's sexually abusing you, but if you think about sexual abuse as
a part of a child's life, there's some things, certainly a relationship
with a parent or father figure, which is much larger than just being
sexually abused.  And in that context, it is much more important to
be able to maintain a relationship with somebody who you care
about, who's been a part of your life since you were born, even if
what they're doing to you is something you don't like, something
that is -- you think is wrong or something that is mutilating to you.
There are much larger things at stake.  And so it may well be that
those characteristics of a parent child relationship would result in
someone failing to disclose, even if they had the opportunity.

[PROSECUTOR:]  If I added to the hypothetical a bit of emotional
and economic background to include the child's fear that
disclosure would break up the family, that the break up of a family
would lead to economic uncertainty, and further that . . . [the]
perpetrator, the father, had instructed the child that if she disclosed,
he might go to jail, would that support your hypothesis that that
would account for nondisclosure?

[DR. URQUIZA:]  Certainly.  As long as the child was old enough
to understand those consequences.  If the child's three, they
probably wouldn't understand it.

I think you had said earlier in your hypothetical, the child was 15.

[PROSECUTOR:]  The child would be 15 today.  Let's assume
that the conduct occurs somewhere in the early teens, 12 to 13?

[DR. URQUIZA:]  If they're old enough to understand some of the
consequences of not having enough money and having to move to
another place, those kinds of things certainly.

Lodged Doc. 16, Rep.'s Tr. vol. 1, 70-72.  Dr. Urquiza also testified that the purpose of CSAAS

was "educational, to give people . . . like . . . jurors[] an understanding about what typically

occurs with a child who has been sexually abused." *Id.* at 59.  Dr. Urquiza emphasized:

It's not my place to make a determination that a particular person
has been sexually abused or not, or a particular person is a
perpetrator or not.  That's not my place.  It's not the place of any
mental health provider.

It is, I think, my place to educate people about sexual abuse, which
is what I think I'm supposed to be doing here today.

*Id.* at 70.

The record shows that the expert's testimony was permissible under California law; the

27

expert did not testify that the victim's claims were true.  A limiting instruction would have had

minimal value because it would only warn the jury not to misuse the testimony, which Dr.

Urquiza and defense counsel already did.  Lodged Doc. 4, at 20; *see*, *e.g.*, Lodged Doc. 16,

Rep.'s Tr. vol. 1, 70 (Dr. Urquiza); Lodged Doc. 18, Rep.'s Tr. vol. 3, 838 (defense counsel).

The absence of a limiting instruction was not sufficient to render the entire trial fundamentally

unfair.  The state appellate court's rejection of this claim was not contrary to, nor an

unreasonable application of, clearly establish United States Supreme Court authority.

E. Ground Four:  Right To Be Present

In ground four, Petitioner argues his "right to be present at all stages of his trial was

violated by the taking of the verdict, polling of jurors, and discharge of jurors in his absence."

Pet'r's Pet. 39.  According to Petitioner, the attorneys appeared in court at 3:05 p.m., and

Petitioner was not present.  *Id.*  The trial court "stated that it had notified trial counsel a little over

an hour before, and asked if [trial counsel] had attempted to reach [Petitioner.]"  *Id.*  Trial

counsel replied that he left a message on Petitioner's cellular phone, and had spoken with

Petitioner's father.  *Id.*  The prosecutor and trial counsel both stated that Petitioner was told to be

within thirty minutes of the courthouse.  *Id.* at 40.  The trial court then "took the verdicts, polled

the jury, and discharged the jurors all without [P]etitioner being present."  *Id.*  Petitioner then

alleges he "arrived in the courtroom, with his parents, at 3:15 p[.]m."  *Id.*

1.  State Court Decision

The California Court of Appeal dismissed Petitioner's right to be present claim as

follows:

> [Petitioner] asserts the trial court violated his federal and state
> constitutional right and his state statutory right to be present at trial
> when the court received the jury verdict, polled the jury, and
> discharged the jurors without [Petitioner] being present.  Assuming
> there was error, we find no prejudice.
>
> A.  *Additional background information*
>
> At 2:00 p.m., August 2, 2005, the court was informed that the jury

28

had reached a verdict.  At 3:05 p.m., the attorneys appeared in court.  [Petitioner] was not present.  The court stated it had notified counsel over an hour before and asked defense counsel if he had attempted to reach [Petitioner].  Defense counsel stated he had left a message on [Petitioner's] cell phone about an hour prior telling him the jury had reached a verdict and he was expected in court.  At around 2:40 p.m., counsel told [Petitioner's] father that he was unable to reach [Petitioner].  The father said he would attempt to find [Petitioner].  Counsel also stated he had told [Petitioner] the previous day to be within 30 minutes of the courthouse.

After receiving this explanation, the court said, "Okay.  Bring the jury in."  The court received and read the verdicts, and polled the jurors.  Defense counsel did not object to this procedure.  After the jury was excused, the court issued a no bail bench warrant for [Petitioner's] arrest, noting that bail was forfeited.

At 3:15 p.m., just minutes after excusing the jury, [Petitioner] arrived in court.  At 3:25 p.m., the attorneys were present, and the court read the verdicts to [Petitioner].  The court informed him that the jurors had been polled and it had confirmed their verdicts.  The record contains no statement by [Petitioner] or his counsel at this point in time objecting to the court's procedure.

B.  *Analysis*

According to the United States Supreme Court, "even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'  (*Snyder v. Massachusetts* [(1934)] 291 U.S. 97, 105-106 [78 L.Ed. 674].)  Although the Court has emphasized that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow' (*id.* at pp. 106-107), due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'  (*Id.* at p. 108.)  Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  (*Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 647].)

The California Constitution grants to criminal defendants the right "to be personally present with counsel, and to be confronted with the witnesses against the defendant."  (Cal. Const., art. I, § 15.)  California courts interpret this right to be present using the same test that applies to the federal right.  (*People v. Waidla* (2000) 22 Cal.4th 690, 741-742.)  "The defendant must show that any violation of this right resulted in prejudice or violated the defendant's right to a fair and impartial trial.  [Citation.]"  (*People*

1    *v. Hines* (1997) 15 Cal.4th 997, 1039.)

2    The federal courts appear to have split on whether the right to be
     present applies to the return and announcement of a verdict.  In
3    *Rice v. Wood* (9th Cir. 1996) 77 F.3d 1138 (*Rice*), the Ninth Circuit
     Court of Appeals stated that whether a defendant had a
4    constitutional right to be present at sentencing by a jury in a death
     penalty case "is an open question."  (*Id.* at p. 1140, fn. 2.)  The
5    Court of Appeals did not answer the question because the state in
     that case conceded the point, to the surprise of the court.  The court
6    noted that the Supreme Court has held there is no constitutional
     right to be present in proceedings where the defendant could not
7    have done more to help his cause than simply appear for the jury's
     announcement.  "(*See* [*Kentucky v.*] *Stincer*, *supra*, 482 U.S. at p.
8    745 (no right to be present during hearing to determine competency
     of prosecution's key witnesses); *United States v. Gagnon* [(1985)]
9    470 U.S. 522, 526-27 [84 L.Ed.2d 486] (per curiam) (no right to be
     present during in camera examination of juror who complained of
10   being intimidated by defendant); *Snyder* [*v. Massachusetts*], *supra*,
     291 U.S. at p. 122 (no right to be present when jury was taken to
11   view the crime scene).)"  (*Rice*, *supra*, 77 F.3d at pp. 1140-1141,
     fn. 2.)

12
     However, two other circuit courts of appeals concluded a defendant
13   has a due process right to be present in court when the verdict is
     rendered.  (*United States v. Canady* (2d Cir. 1997) 126 F.3d 352,
14   361-362 (*Canady*); *Larson v. Tansy* (10th Cir. 1990) 911 F.2d 392,
     395-396.)  The *Canady* court explained the right exists because
15   "the defendant's mere presence exerts a 'psychological influence
     upon the jury.' [Citations.]  This is because the jury in deliberating
16   towards a decision knows that it must tell the defendant directly of
     its decision in the solemnity of the courtroom."  (*Canady*, *supra*,
17   126 F.3d at pp. 361-362.)

18   The parties cite us to no published California case on point, and we
     have found none.  When presented with the opportunity to discuss
19   the issue, our Supreme Court in *People v. Lewis* and *Oliver* (2006)
     39 Cal.4th 970, assumed without deciding there was a
20   constitutional right to presence at the reading of the verdict. (*Id.* at
     p. 1040.)  In that case, the court upheld a trial court's rendering of
21   the guilt verdict while the defendant was hospitalized in very
     critical condition and described as "comatose."  "Consistent with
22   due process principles, we conclude that the trial court properly
     determined that any constitutional right to presence was not
23   absolute, and that -- in the interest of justice -- the verdict could be
     read while [the defendant] was physically incapacitated and unable
24   to attend court following a third party assault.  [Citation.]"  (*Ibid.*)

25   California statutes also provide a right of presence.  State law
     generally requires a defendant in a felony case to be present at trial.
26   (§§ 977, subd. (b)(1); 1043, subd. (a).)  However, where the trial

30

commenced in the defendant's presence, the defendant's absence does not prevent the trial from continuing up to and including the return of the verdict where the defendant is being prosecuted for an offense not punishable by death and the defendant "is voluntarily absent."  (§ 1043, subd. (b)(2).)

The court may also receive the verdict in the absence of a defendant charged with a felony where, "after the exercise of reasonable diligence to procure the presence of the defendant, the court shall find that it will be in the interest of justice that the verdict be received in his absence."  (§ 1148.)  This exception mirrors the exception found by the Supreme Court in *People v. Lewis* and *Oliver*.

Following the Supreme Court's lead, we, too, assume without deciding that [Petitioner] had a constitutional right to be present when the verdict was read.  We also conclude that the trial court's actions did not violate his right because the court implicitly determined [Petitioner] had voluntarily absented himself and it proceeded in the interest of justice, as allowed under *People v. Lewis* and *Oliver* and section 1148.

[Petitioner] obviously was not in custody, and he had made whatever decision he made so as not to be accessible or readily available when the verdict was returned.  Through counsel, the court exercised reasonable diligence to secure [Petitioner's] attendance.  [Petitioner's] counsel had instructed [Petitioner] the previous day to stay within 30 minutes of the courthouse.  Counsel attempted to contact [Petitioner] by phone, but was able only to leave a voice mail message.  Counsel also left a message with [Petitioner's] father.  Approximately 40 minutes after the court learned the jury had reached a verdict, [Petitioner's] father spoke with counsel, stating he would attempt to find [Petitioner].  More than one hour after the court had summoned the parties, [Petitioner] still was no where to be found.  The court had waited almost twice as long as the time period [Petitioner] was instructed to be within the courthouse.  Once [Petitioner] finally arrived, he made no protest and, more importantly, offered no explanation as to why he had not been within 30 minutes of the courthouse.  These efforts constituted reasonable diligence to find him.

Moreover, the jury had been empanelled for four weeks at great disruption to the jurors' personal lives.  The court would not want to keep the jury empanelled for more time not knowing whether or when [Petitioner] might appear.  In short, the operation of justice was not to be unreasonably delayed due to the significant uncertainty presented to the court.  We conclude the trial court did not abuse its discretion in proceeding to verdict in [Petitioner's] voluntary absence in the interest of justice.

[Petitioner] disagrees with our holding.  First, he claims the court

31

made no express finding of voluntary absence or acting in the interest of justice.  We presume the existence of all findings necessary to support the judgment and, as just discussed, the record adequately supports such a finding.

Second, in the absence of such a finding, [Petitioner] claims the error was structural pursuant to *Arizona v. Fulminante* (1991) 499 U.S. 279 [113 L.Ed.2d 302].  We disagree.

In *Rice*, the Ninth Circuit concluded that receiving a jury's sentencing decision without the defendant being present was not structural error.  Its reasoning is persuasive to the rendition of a jury verdict, and we adopt it here:  "The Supreme Court has explained that trial errors are those 'which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.'  [(*Arizona v. Fulminante, supra*, 499 U.S. at pp. 307-308.)]  Structural errors, on the other hand, are defects that permeate 'the entire conduct of the trial from beginning to end' (*id.* at 309), or that 'affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself[']" (*id.* at 310).

"[A defendant's] absence when the jury announced his sentence simply does not fall within the narrow category of structural errors.  Had he been present, he couldn't have pleaded with the jury or spoken to the judge.  He had no active role to play; he was there only to hear the jury announce its decision.  The error in this case does not, like the denial of an impartial judge or the assistance of counsel, affect the trial from beginning to end.  Rather, like most trial errors, it can be quantitatively assessed in order to determine whether or not it was harmless."  (*Rice, supra*, 77 F.3d at pp. 1141.)

Thirdly, and alternatively, [Petitioner] argues the error was not harmless beyond a reasonable doubt.  We disagree for the same reasons expressed in *Rice* as to why the error was trivial.  "[B]ased on experience, it is unlikely that a juror will change his vote merely because [the] defendant is present at return of the verdict and polling." (*Rice, supra*, 77 F.3d at p. 1144.)  Moreover, each juror was polled and each expressed his agreement to the verdict.  Nothing in the record suggests that either [Petitioner], [Petitioner's] counsel, the prosecutor, the judge, or any member of the jury hesitated or expressed doubt about the verdict or the procedure used to announce it.  Even had [Petitioner] been present, he could not have argued or attempted to convince the jury in any way.  Any error associated with the rendering of the verdict in [Petitioner's] absence was harmless beyond a reasonable doubt.

Lodged Doc. 4, at 25-33.

1          2.  Analysis

2          "The constitutional right to presence is rooted to a large extent in the Confrontation

3    Clause of the Sixth Amendment." *United States v. Gagnon*, 470 U.S. 522, 526 (1985).

4    However, the United States Supreme Court has recognized a due process right to be present "in

5    some situations where the defendant is not actually confronting witnesses or evidence against

6    him." *Id.*  That right is implicated "whenever his presence has a relation, reasonably substantial,

7    to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291

8    U.S. 97, 105-06 (1934); *see Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *Gagnon*, 470 U.S. at

9    526.  A defendant has a due process right to presence "to the extent that a fair and just hearing

10   would be thwarted by his absence, and to that extent only." *Snyder*, 291 U.S. at 107-08; *see*

11   *Gagnon*, 470 U.S. at 526.

12         The "privilege of presence" is not implicated where the defendant's presence "would be

13   useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106-07; *see Stincer*, 482 U.S. at 745.

14   Consequently, "a defendant is guaranteed the right to be present at any stage of the criminal

15   proceeding that is critical to its outcome if his presence would contribute to the fairness of the

16   procedure." *Stincer*, 482 U.S. at 745; *see also Rushen v. Spain*, 464 U.S. 114, 117 (1983)

17   ("[T]he right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of

18   each criminal defendant.").  "By the [Supreme] Court's limitation of [the constitutional] right to

19   'critical stages of the trial,' clearly, a criminal defendant does not have a fundamental right to be

20   present at all stages of the trial." *La Crosse v. Kernan*, 244 F.3d 702, 707-08 (9th Cir. 2001).

21   The right to be present is subject to harmless error analysis "unless the deprivation, by its very

22   nature, cannot be harmless." *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005).  To obtain

23   habeas relief, the trial error must have had "substantial and injurious effect or influence in

24   determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

25         Petitioner falls short of demonstrating his presence would have contributed to the fairness

26   of the verdict, served any useful purpose, or had any effect whatsoever on the verdict. *See*

33

1     *Snyder*, 291 U.S. at 106-07; *see also Stincer*, 482 U.S. at 745.  Even if Petitioner's constitutional

2     rights were violated by his absence from the verdict, that error was harmless.  Petitioner has

3     failed to show that his absence had any impact on the ultimate outcome of his trial.  *Brecht*, 507

4     U.S. at 637.  As the California Court of Appeal noted, "[e]ven if [Petitioner] had been present, he

5     could not have argued or attempted to convince the jury in any way."  Lodged Doc. 4, at 33.  Any

6     error was harmless, and the state appellate court's rejection of Petitioner's claim was neither

7     contrary to, nor involved an unreasonable application of, clearly established federal law.  Habeas

8     relief is not warranted on this claim.

9         F.  Ground Five:  Prosecutorial Misconduct

10         In ground five, Petitioner argues his conviction was tainted by the prosecutor's remarks

11     during closing argument, "telling jurors during [closing] argument that [they] could infer that the

12     victim had given two statements before trial that were completely consistent with her trial

13     testimony."  Pet'r's Pet. 46.  Petitioner asserts that "the prosecutor told jurors that V.[]B.'s

14     previous statements to police and investigators were entirely consistent with her trial testimony,

15     although 1) her prior statements were not in evidence[,] and 2) the police reports attached by the

16     prosecution to the complaint and the statement were untrue."  *Id.* at 48.  Petitioner alleges the

17     prosecutor's closing argument "went beyond permissible comment," and "[i]nstead, the

18     prosecutor asserted[] not merely that there was no evidence of prior inconsistent statements, but

19     that V.[]B. had given prior statements, . . . and that [a] tape, if played, would show a completely

20     consistent prior statement."  *Id.* at 52.

21         1.  State Court Decision

22         The California Court of Appeal rejected Petitioner's prosecutorial misconduct claim as

23     follows:

24                 [Petitioner] contends the prosecutor committed misconduct during
                 his closing argument.  [Petitioner] forfeited his right to raise this

25                 argument.

26     ///

A.  *Additional background information*

During closing argument, the prosecutor stated that if V. had made a prior inconsistent statement to law enforcement officers or during her videotaped forensic interview at the MDIC, [Petitioner] would have introduced those statements during trial.  The prosecutor argued [Petitioner] did not introduce those statements because the statements were consistent with V.'s trial testimony.  The argument in pertinent part went as follows:

"What I'm gonna suggest to you is that if there was a single variation between what [V.] told [Officer] Hirai on April 29th 2004, from what [V.] told the [MDIC] interviewer on May 10th, 2004, to what she told you last week, the defense would have brought in Hirai and the defense would have showed you that videotape.  Did the defense do either of those?  No.

"Why?  Because they're the same.  Because her story has been consistent from the start.  What she told Hirai, what she told that MDIC interviewer and that was videotaped, you could have watched it, could have seen it, could have evaluated her testimony at that day and you could have held it up against what she told you in court had the defense wanted you to see it.

"They didn't show it to you.  You'd better ask yourself why.  They went through a lot of trouble attacking that girl, and it's no trouble to get an officer in here and no trouble to show you a videotape.  The answer is very clear.  There was no variation.  That child has been telling the same report of molest[ation] since this affair started over a year ago."

"Now, MDIC, a 45 minute interview on May 10th, 2004 was videotaped, conducted by a trained interviewing forensic interviewer and if the content conflicted, you would have seen it.

"Inferentially then, the MDIC was absolutely consistent with [V.'s] in-court testimony, as was her testimony of Hirai.  She is now telling you what she has always stated."

Defense counsel did not object to the prosecutor's argument.

B.  *Analysis*

"'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.  [Citation.]' [Citations.]"  (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

[Petitioner] did not lodge an objection during closing argument,

35

1         nor did he seek to have the jury admonished to disregard the
        prosecutor's statements.  He thus has forfeited this claim on
2         appeal.

3         [Petitioner] argues he was excused from the requirement to object
        because any objection and admonition would not have cured the
4         harm caused by the alleged misconduct.  (*See People v. Hill, supra*,
        17 Cal.4th at p. 820.)  He asserts an admonition would not have
5         enabled jurors "to set aside the prosecutor's assertion that [V.] had
        made two 'entirely consistent' statements to investigators before
6         the trial.[']"

7         [Petitioner]'s assertion does not explain why the admonition would
        not address [Petitioner]'s concerns.  Rather, it highlights the reason
8         why the prosecutor's argument was not misconduct.  [Petitioner]
        submitted no evidence showing V.'s pretrial statements were
9         inconsistent with her trial testimony.  It was [Petitioner]'s burden
        to make that showing.  The prosecutor was free to comment on
10        [Petitioner]'s failure to call logical witnesses or present material
        evidence.  (*People v. Valdez* (2004) 32 Cal.4th 73, 127.)[7]

11

12 Lodged Doc. 4, at 33-35.

13      2. Analysis

14      The California Court of Appeal held that Petitioner's failure to object to the prosecutor's

15 closing argument waived the claim.  As stated earlier, the Ninth Circuit has applied the

16 California contemporaneous objection rule in affirming denial of a federal petition on grounds of

17 procedural default where there was a complete failure to object at trial.  *See Inthavong*, 420 F.3d

18 at 1058.  Here, there was a complete failure to object, so this claim is procedurally defaulted.

19 The failure to object bars consideration of this claim.

20      Petitioner also asserts that "this Court should deem the failure of defense counsel to

21 object to several instances of prosecutorial misconduct as ineffective assistance of counsel."

22        ————————————————

23          [7] Before us, [Petitioner] argues the prosecutor's statements were particularly egregious
because the prosecutor knew V.'s pretrial statements were in fact inconsistent with her trial
24 testimony.  He relies on a police report summarizing the MDIC interview for this claim.  The
summary states V. told the interviewer that the molestations happened when she was eight years
25 old, and that during the uncharged incident in the vehicle, [Petitioner] was masturbating when the
police officer arrived.  The report was attached to the complaint.  However, the report was never
26 introduced into evidence, nor was the authoring officer or V. ever questioned about the prior
statements.  We thus may not consider the hearsay report.

1  Pet'r's Pet. 58 (citations omitted).  Even if Petitioner's prosecutorial misconduct claim is

2  construed as an ineffective assistance of counsel claim, the claim would still fail.

3        The California Court of Appeal correctly noted that the prosecutor "was free to comment

4  on [Petitioner's] failure to call logical witnesses or present material evidence."  Lodged Doc. 4,

5  at 35.  It is well settled that "the rule prohibiting comment on [a] defendant's silence does not

6  extend to comments on the state of the evidence, or on the failure of the defense to introduce

7  material evidence or to call logical witnesses."  *People v. Valdez*, 32 Cal. 4th 73, 127, 8 Cal.

8  Rptr. 3d 271, 82 P.3d 296 (2004); *People v. Medina*, 11 Cal. 4th 694, 755, 47 Cal. Rptr. 2d 165,

9  906 P.2d 2 (1995); *People v. Mayfield*, 5 Cal. 4th 142, 178-79, 19 Cal. Rptr. 2d 836, 852 P.2d

10  331 (1993); *People v. Morris*, 46 Cal. 3d 1, 35, 249 Cal. Rptr. 119, 756 P.2d 843 (1988).

11  Petitioner is not entitled to relief on this claim.

12                 VI.  CONCLUSION

13        For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's

14  application for writ of habeas corpus be DENIED.

15        These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within seven days after service of the objections.  Failure to file

21  objections within the specified time may waive the right to appeal the District Court's order.

22  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57

23  (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of

24  appealability should be issued in the event he elects to file an appeal from the judgment in this

25  case.  *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

26  ///

1  deny certificate of appealability when it enters final order adverse to applicant).

2

3

4

5  DATED:        January 24, 2011.

6

7

8                                          TIMOTHY J BOMMER
                                           UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26